I'd like to begin this morning by saying, of course, we've agreed that this is a de novo review of the form selection cause that was contained in the employment agreement between Tidewater Crewing Ltd. and the plaintiff, Mr. Matthews, and we're here under Rule 59E because we firmly believe, Your Honors, that what's going on here is a total injustice to Mr. Matthews, and I say that primarily because he is a Jones Act seaman. He has all the rights of an American seaman. He was a non-resident alien as of 2007, and from 2007 through 2016 worked for this company, Tidewater Crewing. I'll get into it a little bit later, but in our motion to alter, we made it abundantly clear to the lower court that Tidewater Crewing Ltd. was actually just a payroll company, not even a true employer. Before you start that, I was a little puzzled by the procedural posture here and wanted to clarify that the Rule 59E motion, that's the only issue you're raising, not the underlying decision, but the Rule 59E decision. Yes, Your Honor, that's correct. But yet, for the two issues it does not . . . you've raised, it appears you're not contesting the 59E ruling. I mean, we'll hash all this out, but I was a little puzzled by the posture of this case. Well, Your Honor, the intent was to file the appeal on the purpose of a reversal based upon a manifest error in the law. That is the position that we take, and we take that position for the reason that under the Jones Act, that was an enabling statute that was passed back in the early 1900s. Again, just to clarify for this recording, both of your issues begin whether the United States District Court should have granted a motion to dismiss, whether it should have granted a motion to dismiss, does it mission the 59E ruling, etc., and I guess that's implied perhaps in the statement of your issues, but we'll sort it all out. All right, sir. So . . . Before we leave that issue, I just looked at your brief because it was my recollection. You don't cite Rule 59E. You don't refer to that ruling. So, I mean, proceed as you want on this argument, but to the extent the argument you're making made here is not the argument that fits your brief, that's not the proper approach. All right, sir. So first of all, the manifest error in the law that we presented to the lower court is that when you look at the Bremen decision, the Supreme Court case, which established that there is a presumption that form selection clauses . . . One more question because you say the manifest error in the law, that's the language you need to get a ruling on a Rule 59E. So you're sticking with your position that all you're here on is your Rule 59E ruling. Is that what you're saying? My interpretation is that entitles us to appeal if there is a manifest error in the law. On a Rule 59E? I mean, that's the standard for Rule 59E, new evidence that was not available before their initial ruling. We've got the . . . you know, you had your . . . the dismissal and then you're contesting that on a 59E. I just . . . I guess I'm cautioning you. You need to be careful. All right, sir. Well, I appreciate that very much and regardless of the rule number, we are here arguing that when the lower court made a ruling that they did not have to apply the Louisiana law that was in the Sawicki case, the policy of Louisiana being we do not in Louisiana enforce form selection clauses in employee-employer contracts. Now, he's not a Louisiana citizen, is he? He's not a Louisiana citizen, but our contention is that the beneficial employer, Tidewater Crewing Limited, excuse me, that the beneficial employer is not Tidewater Crewing Limited. It is Tidewater, Inc. and that they were the ones that were really employing him as fact and they were domiciled in New Orleans. We are also saying that the Supreme Court of Louisiana in the Sawicki case made it clear that that revised statute 23-921 was written in order to protect employees, albeit he's not a Louisiana citizen, against employers that transfer their cases out of Louisiana. Your Honors, I will tell you I have researched thoroughly and I have never been able to find a single case in the history of the Jones Act where a person with U.S. Seaman's rights under the Jones Act has been transferred out of this country. Of course, we're talking common law, Form 9 Convenience here, not 1404A. There are plenty of Jones Act . . . You say that you haven't found a case where a person has ever been transferred out of this country who had a claim under the Seaman's Act.  That's even more than the Seaman's Act. Even if they had signed an agreement that their claims would be heard someplace other than the United States. Yes, Your Honor, because there's been plenty of these cases that have been adjudicated and the ones against Tidewater and other offshore companies that have been transferred, every one that the lower court relied upon involved a foreign seaman, okay? The Marine Chance case, for example, is one. Basically, what I would also indicate is that in Document 123.5, an affidavit, Mr. Matthews attested to the fact that when he signed this contract with Tidewater Crewing Ltd., he signed it in Louisiana. So, we're looking at a contract that Tidewater seeks to enforce and just pull it out. We have to look to the law of the forum for where it was written to determine whether it's valid or not. And I know that the lower court indicated that Her Honor felt that she didn't need to follow Louisiana law because Louisiana law in the statute itself, it said it was procedural in nature. But we're not talking about the statute when we talk about the policy of Louisiana under the Supreme Court, Sawicki. And so, when I went through and looked at the other cases involving Bremen and the two tests that we look at to determine that this was unreasonable was, first of all, that when you look at the circumstances, you've got a United States seaman with rights to be in this country. He has been diagnosed with prostate cancer, metastatic to his bones. He's at stage four taking dialysis three times a week. He hasn't worked since he became ill in 18, so he hasn't worked in like six years. And he's working for a corporation that when we took their deposition, their 30B6 witness admitted Tidewater Crewing Ltd., the company for which he signed the agreement, is just a payroll company. It delegates the operations to something else. And so, you've got a man that worked for a company for 30 years, deathly ill, who signed an agreement with a company that's a sham corporation, a paper corporation, being sent So it's contrary, if you look, the lower court said, look at the law of the forum, which is federal court. The strong public policy of the federal court is the Jones Act does not allow these rights to be abrogated. If you look at the Supreme Court case of Southern Pacific versus Jensen, 1917, U.S. Supreme Court case, Jensen specifically held at page 530, the exclusive jurisdiction of all civil cases of admiralty and maritime jurisdiction is vested in the federal district court saving the suitors in all cases the right of a common law remedy where the common law is competent to give it. And they cited at page 528 that it follows under Article III, Section 2 of the Constitution that it extends this judicial power of the United States to all cases of admiralty and maritime jurisdiction. So in Jensen, that case was one where it was found in New York and the employer wanted to impose New York workers' comp on a seaman. And the Supreme Court said, you can't abrogate the rights of a seaman this way and put him under workers' comp. It's illegal. And that's been the law in the country ever since. And as you know, the Jones Act adopted the FELA, the Railroad Act. There's never been a railroad case where they took an American railroad worker and transferred it to a foreign country. So those are the key issues on the strong public policy. We win on federal because of the Jones Act and we win on the state of Louisiana because when Bremen said, look to the law of the forum, the lower court said what that meant was you look at the federal court, the federal law. But think about it, Your Honors. Right before that in Bremen, the Supreme Court said there is a presumption that forum selection clauses in employment contracts are valid. So once they say that, then they go to the exceptions and there were four of them. I think fraud, so unreasonable as to make a jury trial not susceptible for the plaintiff. And then the one here, number four, point number four, which you look to the law of the forum. What does that mean? It can't, they couldn't have meant just look back to the federal system. They've already said the federal system assumes these contracts are enforceable and they're listing exceptions. And if you look at the Fifth Circuit case of Haynesworth, Haynesworth was a case where you had investors in Lloyds, American citizens, 78 of them, and they sued Lloyds over in Texas. And they cited as part of their position that the case couldn't be transferred under the Texas Deceptive Trade Practices Act and under the Texas Securities Act. And Haynesworth, when it talked in terms of the unreasonable situation, said, we look at the forum state, they used the word state, and in that analysis, those judges actually said, they looked at the state and they said, we're not going to disallow transfer because of the Texas Deceptive Trade Practices Act or the Securities Act because those facts are inapplicable here, but they looked at it. So what I'm saying is you cannot fail to look at Louisiana policy under Bremen. That is exactly what the court is supposed to do. And if you look at Louisiana policy, it's very clear and unequivocal that it says the public policy of the state is not to transfer these cases. I'm trying to follow. You're telling me I should look at the law before, and then I heard you say that the forum is the federal court, federal law. But now you're telling me I should look at Louisiana law and that's the forum I should be looking at? Judge, I apologize. I didn't make myself clear. What I'm saying is the lower court said, when the Supreme Court said, look to the law, the  lower court said, look to the law, the lower court said, look to the law, and that's where the judges sat. I am saying, even if we accept that as true, which I do not, if you look to the law of the federal system, you're looking at the Jones Act and you cannot abrogate a man's rights to another country, you could transfer it to another state. Then I'm saying on the other side of it, which is what we truly believe, when they said the law of the forum, they meant look at the context of what's going on here. For example, in the Marine Chance case . . . Hold on a second. So the law of the forum is the context. Now, you're still not talking about the law of Louisiana. You're talking about the context. Yes. Yes, sir. Tell me what the context is. Okay. Mr. Morgan, stay behind your microphone, if you would, when you speak. Certainly, look at your notes wherever you want to, but when you speak . . . Yes, Your Honor. . . . the recording needs to be picked up by the microphone. Okay. So if we look at Marine shipping, Fifth Circuit case 1998, in that case, it was a declaratory judgment in federal court stating that the Limit of Liability Act to enforce a forum clause to go to the Philippines was at issue. And the court said the clause was fair and enforceable. Why? Because in the context, they looked at the law of the Philippines, which is a labor law, which was enforceable because of the treaty that the United States had with the Philippines. So they did look outside the federal forum, and they looked at that law. In Hainesworth, which I talked about a moment ago, the court specifically alluded to the fact that, and this is in Head Note 234, page 963, the fourth exception to determine if the clause is unreasonable or for enforcement of the forum selection clause would contravene the strong public policy of the forum state. That is the law in the Fifth Circuit that was decided back in 1997. So Sean, I've got one minute left. The other thing that I would like to mention is we're entitled to relief if we can show that this transfer is unreasonable under the circumstances. I know the lower court said, and other courts have said, you can try these cases to England by Zoom. I imagine the reason I'm standing here is so that you all can see what I am and who I am, whether I'm credible and what I'm talking about. You can't try a case over Zoom to England. There's an eight-hour time difference, for example. And so, I believe this court should certainly address the issue of how unreasonable it is to transfer a gentleman that's worked for a company for thirty years to a foreign country when he's deathly ill. He sued them right here in New Orleans. He pled in his original petition that there was a wrong done to him on the last physical done in September of 2016 in Houma, Louisiana, when he had a physical. He had blood in his urine. He had protein in his urine. He was not told that. That's a Louisiana tort that occurred here, and it's fair that the case be tried here. Thank you. Thank you. May it please the Court, I represent Appellee's Tidewater Crewing Limited and Tidewater, Inc. And I think that the biggest focus in this case is really waiver. I just want to clarify a couple factual points from Appellant's argument real quick. Before you start that, his last . . . Counsel, Mr. Morgan's last comment was it's a Louisiana tort that occurred here, but the man totally worked off in the Red Sea area, didn't he? Yes, he . . . He worked in Louisiana. Yes, he always worked in Egypt or Africa, and his deposition testimony, which was in the record before judgment as a result of some discovery motions, it wasn't, you know, provided in terms of the motion to dismiss. It was also provided with the 59E motion, and it contradicts his own declaration about the ties to Louisiana. He himself testified that he always worked in Egypt, that he signed all of his contracts in Egypt, and that he was only in Louisiana for trainings, I think, maybe five times over the course of his long career. And with regard to the parties, Tidewater Crewing is really the only entity at issue here because Tidewater, Inc. has been discharged in bankruptcy. Tidewater Crewing is the company that I believe Appellant is referring to as just a payroll company, but that's not correct. They are a staffing company. They actually didn't handle the payroll, and that's in the record before judgment through the depositions as well. I don't think that the court needs to go into any of that, but I just wanted to correct those factual pieces. The waiver issue, I think, is really . . . Wait. Next question before you get there. Yeah. Do you see a distinction between today he's urging the Rule 59E was wrong, but he doesn't cite the Rule 59E in his brief, per se. I mean, he's talking about being dismissed on that motion. Do you see that that makes a procedural distinction that we need to be . . . Yes. . . . to take action on? I think that that's part of the waiver, where the issues in the brief don't really match up with the order being appealed, and so I'd argue that some of those things were waived by not briefing why he couldn't . . . and this also was waived in the trial court. This is why the denial was proper on the 59E. There wasn't an explanation of why he couldn't have obtained this discovery earlier. In fact, the trial court found that all the exhibits . . . not all the exhibits, but I think everything except the letter and the new declaration he tried to put forth, those could have been presented before judgment. They were all part of discovery, and the legal arguments that he tried to present on 59E, those all could have been raised before judgment, and this court has been consistent in saying that you can't raise new legal arguments for the first time through a 59E motion. You also ask you . . . I was looking through the brief when Mr. Morgan focused so much on the Jones Act as creating a special regime. No case has ever allowed this sort of transfer. I didn't see that in his brief of focus on the Jones Act. Was that significant in district court, that that was a unique category of law applicable to form nonconvenience? I think that argument has been abandoned on appeal. It's not part of his briefs. I noted that his 59E motion . . . You say abandoned. Was it an issue in the district court that the Jones Act itself created a special legal regime that needed to be considered? That was only raised in the 59E motion after judgment. He raised two policy grounds for challenging the form selection clause. One was the Louisiana statute, and the other was Jones Act policy. And then on appeal, the briefing did not seem to address the Jones Act piece. There was . . . You may not have been prepared to respond to it since it wasn't mentioned in the brief. Do you have a response, though, to what he alleged, alleged, maybe too critical a word, what he stated about the case law, that there is no Jones Act case? Yes. I have some points to make on that. I think that the issue when we're talking about the form selection clauses and injured semen, I think some cases that would be helpful to the court to look at are the Calix . . . Are these things that are in your brief? Yes. Yes. And the American dredging case that's a Supreme Court case, I think is very instructive even though it is not dismissing an injured semen case, but the posture of that case was that it was coming up to the Supreme Court from a Louisiana state court. And there, the Supreme Court said that a Louisiana state court could look to their own policy and that it wasn't completely contrary to Bremen. But I think the fact that they're saying that and the discussion in that case, it's clear that when you're in a federal court, you consider federal policy. And so, I think that's one example. Another one, I think, is the Dahia case in this court. And there, again, it's just for discussion purposes. I think Justice Barksdale was on the panel there. The court found it didn't have appellate jurisdiction because it was a case with facts similar to this where it was removed and the district court had ordered remand before the appeal to this court. So, this court found it couldn't entertain the issues. It did not have appellate jurisdiction because of the remand order. But the dissent in that case discusses this statute and how it directly conflicts with Bremen if it's tried to be applied in a federal court. And the dissent actually thinks, you know, even going into state court, that it really creates an issue of conflicting policy rationales. When the contracts and the activities are international, applying Louisiana state policy over federal policy, which respects international comity, issues with maintaining relationships with other countries, those kind of things should override a state policy that really is focused on protecting its own residents. And it's not argued Mr. Matthews is not a resident of Louisiana and never has been. So, I think that those, even though they are not examples where the ruling was to send, you know, a Jones Act claim or a Jones Act semen out of the country, they're very instructive. And one more factual point I do want to make . . . When I ask you, you say instructive, and you are responding to my question of what case law is there, I'm not quite hearing that any of those was a Jones Act case in which the Jones Act semen plaintiff was, in fact, required to have his claim heard in a foreign jurisdiction, a foreign country. Is there such authority? And have you cited it in your brief where that actually was done in the case? I think . . . And I . . . So, the Marine Chance case, I think that that's one where there was an injured semen and it was not a case coming up in this posture. It was a limitation of liability case that was brought here. And that was the . . . I'm sorry. Sorry, that was a limitation of liability case, but I believe there the forum selection clause was considered appropriate and so the semen went overseas. I don't know if there was specific discussion about the semen qualifying as a Jones Act semen, and that's also an issue here that has, I think, been waived in the trial court and here, but there was briefing at the beginning of the case as to why Mr. Matthews is not . . . does not qualify as a semen under the Jones Act. But I don't think that issue is really before this court. I just wanted to clarify that point. And then, just a couple more things. The point about the statute protecting . . . Did the district court hold that he was not a Jones Act semen? I'm sorry? Did the district court ever address whether he was a Jones Act semen? It did not rule on that. That was part of the 12B6 grounds, I think, that were raised and the district court found that because it held the forum selection clause valid and dismissed on those grounds, it did not address any of the 12B6 grounds. And to address the Louisiana policy head-on, we've argued in our brief why we don't think it really is proper to be considered. It's because it is procedural and it is a . . . this is not a diversity case. I think the discussions from Bremen and Hainsworth and even in Sawicki, the case that the I think those make clear that in a federal court where you are dealing with claims of this type, you should not consider the state policy for a couple reasons. Sawicki talks about the fact that the Louisiana policy does not contradict Bremen, and it's not directly connecting this, but the next section of its analysis is a retroactivity argument, and it finds that this statute is procedural. That's consistent with the federal precedent that forum nonconvenience is a matter of venue, which is procedural, and so when you are in federal court, you apply federal policy, and this case, I understand . . . it's a little complicated because of Bremen, and I think there's also some waiver there. Even if this was a case like Dahia, where the removal had been challenged and preserved, we might be looking at different arguments, but here, there was a motion to remand that the appellant withdrew, so I think any argument based on the fact that he originally tried to file in state court goes away because this court has said that when improper removal is waived, the only question is whether the claims could have originally been brought in federal court, and because he alleges maritime claims, the court has jurisdiction over those, so I don't think we get there, but if we do get to the Louisiana statute and looking at the policy, I think Sawicki and some other cases discussing that statute are clear that it's not intended to apply in federal courts. It's supposed to be limited. The purpose is to protect Louisiana residents. There is a discussion about where it's located in the statute. It's within the employment code, the state's employment code, which I admittedly, I looked and it doesn't define employee or employer to limit it to the bounds of the state, but the idea that Louisiana passed a statute which intended to go reach out and touch contractual employment relationships that don't have a connection to it, I think, is not the proper construction of the statute, and there was a discussion in Sawicki and also a discussion in, I think, Shelter Mutual that addressed that. Would there be a problem on the case law? Is there anything directly contrary in the case law that when the description is to consider the policy of the forum that in a case such as ours, federal case, and obviously filed in the state, that you look at both policies? Yes. This court's . . . I wouldn't say there is something contrary in that I don't think there's been a holding that you should consider both, but this court's decision in the Lim case was presented with the issue of what is the relevant forum for consideration of a strong public policy argument, and it had before it Louisiana and federal, and it evaluated both without deciding. It found that the indication is that the U.S. is the relevant forum, but we need not decide that today, which is what the district court did in this case, too. It followed suit and said, there's an indication we should only follow federal policy, but even if I considered Louisiana policy, it would not outweigh the federal policies. I think that even if you did consider the Louisiana statute as attempting to reach this situation, the federal policy outweighs it based on this court's and the Supreme Court's precedent. And then I think any . . . like with the waiver issue on the remand, arguments about the right choice of law, I think, have been waived because that was not addressed in the trial court before judgment. His only response to any choice of law argument was that it was premature. It was the same with the forum selection clause. Before judgment, the only argument we had is that the court shouldn't decide this right now. So I think the court could affirm on that basis to say everything beyond that has been waived, so we don't have to address any of these substantive issues about what policies apply. Under your understanding of the law, is there any manner in which Mr. Morgan's client's physical problems weigh in the calculation? Given the forum selection clause, it does not. With the exceptions he was discussing, he raises the issues of his client's personal circumstances in the context of it resulting in him losing his day in court or the enforcement being fundamentally unfair. But there is consistent case law from this court that that is not the focus of that exception. The focus is on the law of the forum to be transferred to and whether the nature of the law there is fundamentally unfair regardless of who the party would be. And London and England is one that certainly for maritime and admiralty cases has been found to be very fair and impartial. And this court also, this is again in the vein of waiver, there are some cases where people have tried to raise this either specifically with travel restrictions or to say that it would be unfair because the statute of limitations will have run in the forum they had contracted for. And in those instances, this court has said that that is insufficient to outweigh the forum selection clause because it is essentially, it is a circumstance. They, you know, it's . . . they made a strategic choice. But if you're talking about forum selection, I understand. I understand. Right. Choice having been made. But if you're talking about forum nonconvenience, isn't that a fancy way of saying we're looking at what's more convenient or what's inconvenient? Yes. It might come into play a little bit more in the private interest factors if it was a traditional common law forum nonconvenience absent a forum selection clause. But importantly here, because there's a valid forum selection clause, the private interest factors do not get considered. The same with the availability and adequacy of the forum. Those aren't evaluated independently because this court and the Supreme Court's jurisprudence on that is that a valid forum selection clause has already accounted for those. The parties are presumed not to have agreed to a forum . . . But with a valid forum selection clause, you don't even consider forum nonconvenience? You consider the public interest factors in the forum nonconvenience analysis, but you don't have to evaluate the . . . You don't consider the privacy. Correct. That's correct. They're deemed to weigh exclusively in favor of the selected forum. And that's based on, I believe it's Supreme Court case law, but I think it's been echoed in this court as well, that a court will presume that the parties would not agree to a forum that was inadequate to them or that was so inconvenient that they shouldn't do it. And those cases where I was talking about the personal circumstances coming up, they've doesn't change the fact that you contracted our interests. There's a higher interest in holding parties to their bargain and freedom to contract instead of having someone who's made a strategic decision to violate a forum selection clause and then essentially rewarding them for that violation by applying, you know, the personal circumstances or looking to the policy of the state where they tried to bring suit but wasn't contracted for as a way to get them out of their bargain. And that's another issue that I think I wanted to raise. You mentioned, you know, the Bremen case and the presumption that forum selection clauses are valid. In talking about the forum state there, he seems to make an argument that Bremen would be circular if you meant federal forum. But in that case, the forum state that they were going to consider was England because it was a limitation of liability proceeding where there was already a case pending in London. And so I think it's, and from the, you know, case law following, that it's clear that the forum state means the state where the suit is pending and the state where the contractual clause would send it. And here, while he tried to file in state court, he waived remand. And so we are only dealing with a federal forum, I think. One other thing, he mentioned the FILA Act and the Jones Act. There is case law that the Jones Act, the Jones Act does not adopt the FILA venue provisions. And since forum selection clauses are a matter of venue, FILA cases on forum selection clauses or anything related to venue do not carry over to the Jones Act. Let's see. And I think just the overriding interest that is clear from all of these cases is that there is a strong federal policy when the circumstances are like this, where you have international parties, international companies, activities overseas. A lot of the parties and the evidence would be overseas to not disregard a contract that those parties have made because it would be very parochial for the United States to say we are going to handle that in our courts rather than allow, you know, the world and the parties to follow through with their contract. I believe that was in Bremen and I think also in Atlantic Marine or American Dredging, which I assume that my time is up. Thank you for that. All right, Counselor. Thank you. First, I'd like to say, Your Honors, that in our response in opposition to Todd Waters' accruing motion to dismiss on the first page, we said plaintiff holds a green card and is entitled to the rights of an American seaman and has been living in Miami since 2007. So we did present that there and at the tail end of that opposition, we said he has the rights of an American seaman. With respect to what we did in the appellant brief here, we mentioned specifically that the choice of law informed selection in plaintiff's employment contract, this is on the first page, is unenforceable under the Jones Act as it adopts FELA law. Mr. Matthews is a ward of the court, specifically a ward of the United States judicial system, not English courts. With respect to what the Supreme Court said about the bargaining power of the parties, they viewed that as very important. I'm referencing the Bremen decision at page 1916 where the court said, We are not here dealing with an agreement between two Americans to resolve their essentially local disputes in a remote alien forum. In such a case, the serious inconvenience of its contractual forum to one or both of the parties might carry greater weight in determining the reasonableness of the forum clause. And that's the situation here. Mr. Matthews is not a sophisticated person. He certainly did not understand the ramifications. And if you look at it objectively, he's an intelligent person that works hard with a high school education. But, Your Honor, remember this. When he signed this contract in September of 16 in New Orleans, he didn't know he had cancer. He didn't know he had stage four kidney failure. He wasn't told this. Is that in the record? Yes, sir. It certainly is. It's in the record. And that was all over our motion to alter. We made that emphatically clear. The other thing about this that I wanted to bring to the court's attention is in the Marine Chance case, that was a foreign seaman. He was never determined to be a person that had the rights of a Jones Act seaman. And with respect to the lower court's ruling on whether or not Mr. Matthews was a Jones Act seaman, they certainly found that. Her Honor found that in her order, document 121, page 7, this arises under the laws of the United States, 28 U.S.C. 1331, the court finds that it has federal question jurisdiction over plaintiff's Jones Act claim. Here, plaintiff's maritime claims are so related to his Jones Act claims, which are within the court's original federal jurisdiction. That was a general maritime law claim as well. What you read wasn't a finding by Judge Vitter that he was, just that that was the, what the claim arose as. Is there any finding by the district court that he actually was a Jones Act seaman? That's as far as she went, Your Honor. And with respect to the, the Lim decision, in that court . . . Let me say just three minutes, and your three minutes are gone. Okay. Thank you. Thank you. Thanks to you both, helping us understand this case. We'll take it down to advisement. Thank you. I call the next case of the morning.